UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
ANN GREEN,                                                :
                                                          :
                              Plaintiff,                  :         **MEMORANDUM DECISION**
                                                          :         **& ORDER**
              - against -                                 :
                                                          :         15 Civ. 5824 (BMC)
ROCHDALE VILLAGE SOCIAL SERVICES,                         :
INC., ROCHDALE VILLAGE SENIOR                             :
CENTER, and SHEREE SHIVERS,                               :
                                                          :
                              Defendants.                 :
--------------------------------------------------------- X

**COGAN**, District Judge.

        Close personal relationships in the workplace are often breeding grounds for employment

discrimination suits.  The risk of suit is particularly high when the employer is a social-service

agency and one of its employees, the future plaintiff, establishes such a relationship with one of

the agency's clients who the employee needs to serve.   Add to the mix a terrible history of

unrelated workplace infractions by the employee, for which, at least as to some, the employee

inevitably has her own side of the story, valid or not, and the employee may well perceive the

consequences of the litany of reported infractions to be the result of the client's conduct, and her

employer's inadequate response.

        This is not to say that an employee cannot be the victim of the client's improper conduct

and her employer's improper response to it.  In the present case, plaintiff has established issues

of material fact as to whether she was subjected to repeated sexual harassment and whether

defendants ignored her complaints about this harassment.  However, a reasonable jury could not

conclude that her employer reduced her hours for any reason other than her abjectly poor

performance.

# BACKGROUND[1]

Plaintiff seeks damages from her former employer, Rochdale Village Social Services, Inc. and Rochdale Village Senior Center (collectively, "Rochdale"), and her former supervisor, Sheree Shivers ("Shivers"), alleging violations of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff, who was employed as a van driver for Rochdale, alleges that she was discriminated against because of her gender, constructively terminated in retaliation for complaining about sexual harassment, and subject to a hostile work environment based upon the harassment.

Plaintiff was employed as a van driver with Rochdale from September, 2007 until her hours were reduced in December, 2013, at which point she resigned. Her job as a bus driver was to transport senior citizens from their homes and other places to participate in various activities at Rochdale. Plaintiff's supervisor was individual defendant Shivers.

During the employment period, Shivers met with plaintiff on several occasions because of numerous complaints made by both Rochdale's clients as well as plaintiff's co-workers. Defendants have provided evidence of at least ten complaints made about plaintiff during the employment period. The complaints, and the meetings to address them, spanned several years.

The complaints about plaintiff began in 2008. They concerned both plaintiff's performance of her duties – such as refusing to operate the wheelchair-assist lift on her van and failing to assist seniors up the steps – as well as her negative attitude. In December, 2008, Rochdale employees complained about plaintiff after she almost hit them while driving the van

---

[1] Notwithstanding the basic principle that the facts must be construed in favor of the opponent to a summary judgment motion, Local Civil Rule 56.1 provides that unless a party responding to a statement of undisputed facts cites evidence as to those statements that she denies, the statements will be deemed admitted if they are supported by citations to evidence in the record. Plaintiff did not cite any evidence as to those of defendants' statements of undisputed fact which she purported to deny, and since defendants' statements are supported by citation to evidence in the record, they are deemed admitted. See Local Civil Rule 56.1(c); Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003).

and splashed them with water. Plaintiff did not stop to apologize for her actions. In 2009, other Rochdale employees complained about plaintiff's failure to follow parking directions such as double-parking and blocking other vehicles, failure to return the keys to the Rochdale office, and other van procedures. There were further complaints about plaintiff's failure to follow protocol relating to picking up Rochdale clients from medical appointments. There were also complaints from clients alleging that plaintiff was rude, insensitive, impatient, bullying, and talked to them in a "harsh nasty tone." In 2010 and 2011, defendants gave plaintiff written notice that she had to comply with proper van procedures.

During her employment, plaintiff became friends and fraternized with a non-employee male senior citizen Rochdale client, who I will refer to as Mack. They would often talk by phone for hours at a time, and plaintiff invited Mack to her birthday party at Rochdale where he helped her secure a table for the celebration. They also spent time together outside of Rochdale; she cared for him when he was sick, visited him in the hospital, and met his family. In 2011, plaintiff and Mack celebrated her birthday at a restaurant. Additionally, plaintiff invited Mack to a New Year's celebration in her building and he attended.[2]

On April 18, 2012, Mack complained to Shivers that plaintiff had refused to pick him up. Plaintiff then complained to Shivers that Mack had engaged in improper conduct towards her. Specifically, plaintiff told Shivers that Mack was upset because he likes her and talks about her body.

---

[2] In plaintiff's opposing Rule 56.1 statement, plaintiff denies that she attended a program in her building's community room for New Year's and invited Mack. However, in her deposition, she testified that she "invited quite a few of my friends and people to come and he was one that came. Yes, I invited him." Plaintiff cannot create an issue of fact by contradicting her sworn testimony. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). In addition, plaintiff's denial in her Rule 56.1 statement does not cite to evidence. Defendants' statement of undisputed fact, relying on plaintiff's deposition testimony, is therefore deemed admitted. See Local Rule 56.1.

At her deposition, plaintiff provided more details about Mack's alleged inappropriate conduct. Specifically, plaintiff testified that Mack's inappropriate conduct began "about a year and half prior" to her resignation and would occur nearly every day. The harassment took various forms, including touching plaintiff's arm or leg while she was driving, telling plaintiff that he wanted her, revealing his genitals, placing an object in his groin area, and touching plaintiff's breasts. Plaintiff testified that every time she met with Shivers to discuss a disciplinary complaint that had been made against her, she would bring up Mack's behavior. She also testified that she would stop by Shivers' office more informally to report Mack's behavior, but Shivers did not take her complaints seriously. Plaintiff also testified that she participated in three separate meetings (not just the April, 2012 meeting) with Shivers and Mack to discuss her complaints. Plaintiff has not provided more specific details about the dates of these meetings.

It is undisputed that on April 23, 2012, Shivers held a meeting with both plaintiff and Mack to discuss the accusations made several days prior. Plaintiff complained that Mack had made statements that had upset her, including that they could be together and the things he wanted to do to her. She also stated that Mack would touch her. Mack denied all accusations, except for acknowledging that he made a comment about her breasts.

Shivers concluded that it was difficult to determine what had happened between plaintiff and Mack because of their conflicting stories. During the meeting, Shivers advised plaintiff that, as a staff member, personal relationships with clients of Rochdale were unacceptable. Shivers also told Mack that his comment was inappropriate, and he apologized.

Notwithstanding the instruction not to fraternize with Mack that Shivers gave plaintiff at this meeting, plaintiff subsequently went to Mack's apartment when he was ill.

Complaints about plaintiff from clients continued after the April, 2012 meeting. Specifically, Shivers received a June, 2013 complaint that plaintiff refused to use the van's lift when requested by senior citizens. Shivers advised plaintiff in August, 2013 to operate the van lift every day. In October, 2013, Shivers met with plaintiff to remind her again that she must use the lift when senior citizens require that accommodation.

Shivers received another complaint about plaintiff's failure to use the lift on November 4, 2013. Two days later, she met with plaintiff to discuss several issues and complaints made about plaintiff, including her failure to use the van lift, leaving too early and stranding senior citizens who required the van services after lunch to return to their homes, and inappropriately asking senior citizens for payment. Shivers again reviewed plaintiff's job duties with her at this time. Plaintiff claimed that although there were complaints about her concerning assisting senior citizens into the van with the vehicle's lift, the lift did not work properly.

Shivers received additional complaints about plaintiff, despite several warnings and meetings to discuss her attitude and job duties. On November 18, 2013, Shivers was informed of a verbal altercation between plaintiff and a senior citizen – using a more vernacular term than I am using here, plaintiff threatened to kick the client in the posterior. Roughly two weeks later, Shivers met with Mack and five other senior citizens regarding plaintiff's failure to pick them up on time and her refusal to help them with the van's lift.

On December 10, 2013, Shivers told plaintiff that as a result of all her infractions, her hours were being reduced and she would only be asked to work as a backup driver on an as-needed basis. Plaintiff resigned because of this new arrangement. Plaintiff also contends that she obtained an Order of Protection against Mack around the same time that she resigned.

In January, 2014 – after plaintiff's resignation – police came to Rochdale to follow up on plaintiff's sexual harassment claim in which she alleged that Mack had shown his penis to her. Shivers informed the officers that plaintiff had complained only once about Mack, back in April, 2012, and the issue was addressed at that time. Mack told the officers that he and plaintiff were friends and he denied showing his penis to her.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196, 200 (2d Cir. 2010) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). On a motion for summary judgment, it is not for the court to weigh the evidence, assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried. See United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994). The record must be construed in the light most favorable to plaintiff, Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102 (2d Cir. 2013), but "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Further, "conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir. 2007).

## I.    Gender Discrimination

### A.   Title VII Claims

Discrimination claims under Title VII are governed by the familiar three-step burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  At step one, plaintiff must make out a *prima facie* case by showing that (1) she belongs to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93 (2d Cir. 2010).  The burden of making this showing is *de minimis*.  See Joseph v. Leavitt, 465 F.3d 87 (2d Cir. 2006).  Circumstances contributing to an inference of discrimination may include, among other things, invidious comments about people in the protected class, or more favorable treatment of employees outside of the protected class.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

At step two, a defendant must "articulate some legitimate, nondiscriminatory reason for its action," but "need not persuade the court that it was actually motivated by the proffered reason."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks omitted).  Having done so, the presumption of discrimination is rebutted and it "simply drops out of the picture."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2749 (1993).  If the defendant makes this showing, the analysis proceeds to step three.

At step three, the burden then shifts back to the plaintiff to show "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."  Univ. of Tex. Sw. Med. Ctr. v. Nassar,

133 S. Ct. 2517, 2523 (2013).  The evidence that should be considered at step three includes "the strength of the plaintiff's *prima facie* case" as well as "the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case."  James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S. Ct. 2097, 2109 (2000)) (internal quotation marks omitted) (edit marks in original).

    1.   Step One

Plaintiff easily satisfies three of the four elements necessary to establish a *prima facie* case – she is a member of a protected class, she was qualified to be a van driver, and her reduction in hours constitutes an adverse employment action.  The issue is whether – considering only the evidence provided by plaintiff – there are circumstances that give rise to an inference of discrimination.

For a reasonable jury to find that plaintiff has established this factor, plaintiff must overcome the presumption that discriminatory intent is less plausible when both the supervisor and plaintiff are in the same protected class.  See Fosen v. The N.Y. Times, No. 03 Civ. 3785, 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006) (granting defendant's motion for summary judgment) ("Any inference of discrimination was also critically undermined by the fact that the supervisors responsible for Plaintiff's termination and transfer were both women."); see also Rodriguez v. N.Y.C. Health & Hosps. Corp., No. 14 Civ. 4960, 2015 WL 5229850, at *5 (E.D.N.Y. Sept. 8, 2015) ("Since all three parties are male, it is highly unlikely that gender-based animus motivated the decision …").

Keeping in mind my obligation to view the facts in the light most favorable to plaintiff, I find that she has met her low burden at this stage and can establish that there are circumstances

giving rise to an inference of discrimination.  Plaintiff testified that on three separate occasions,

she met with Shivers and Mack to discuss her sexual harassment allegations.  She also testified

that she would stop by Shivers' office fairly frequently to discuss the harassment.  The only

remedy taken by defendants was to ask Mack to issue an apology on one of these occasions, and

reprimand plaintiff for having a relationship with a client.  Further corroborating her allegations

of harassment, plaintiff sought and obtained an order of protection from the police in response to

Mack's continuous advances.  Instead of addressing plaintiff's allegations, her hours were

reduced.  Plaintiff has no evidence for any of her allegations except her own somewhat vague

testimony, but that is sufficient to constitute a *prima facie* case.

### 2.  Step Two

Defendants have provided a legitimate, non-discriminatory reason for plaintiff's hour

reduction.  Complaints about an employee are considered a legitimate, non-discriminatory reason

for an adverse employment action.  <u>See, e.g.</u>, <u>Joseph v. Owens & Minor Distrib., Inc.</u>, 5 F. Supp.

3d 295, 313 (E.D.N.Y. 2014).  As documented in plaintiff's work history, she repeatedly

performed poorly at her job and treated Rochdale's clients rudely and aggressively.  It is

undisputed that plaintiff met with Shivers on several occasions because of numerous complaints

made by clients who used the van service.  The complaints, and meetings to address them,

occurred throughout plaintiff's employment, including as late as eight days prior to her adverse

employment action.[3]  Plaintiff's fellow employees also complained about her poor attitude and

behavior, including intentionally splashing them with puddle water and driving recklessly.

Plaintiff's documented work history during her tenure at Rochdale shows that Rochdale could

have reasonably believed that she consistently did not perform her basic job duties, like driving

---

[3] Although plaintiff's Rule 56.1 statement denies some of these complaints, plaintiff does not cite to any evidence; therefore, these statements are deemed admitted.

Rochdale's clients, adequately. Defendants have proffered a legitimate reason for the adverse employment action and have therefore met their burden under the second step of the <u>McDonnell Douglas</u> framework.

### 3. Step Three

Under the third step of the <u>McDonnell Douglas</u> framework, the burden reverts back to plaintiff to demonstrate an issue of fact as to whether the adverse employment action was motivated at least in part by discrimination. See <u>Mihalik</u>, 715 F.3d at 110. The evidence to be considered at this stage includes both the plaintiff's *prima facie* case, as well as "the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." <u>James</u>, 233 F.3d at 156 (quoting <u>Reeves</u>, 530 U.S. at 148-149, 120 S. Ct. at 1109).

At this stage, the burden is higher than that required to establish a *prima facie* case, and an "initially vague allegation of discrimination" must be "increasingly sharpened and focused." See <u>Meiri v. Dacon</u>, 759 F.2d 989, 995 (2d Cir. 1985). Moreover, "there is no arbitrary rule or presumption as to sufficiency" to support a finding of discrimination. <u>James</u>, 233 F.3d at 157. In addition, at the third step plaintiff's evidence cannot be considered as solely individual instances of discrimination – the evidence must be considered as a whole. <u>Walsh v. New York City Housing Auth.</u>, __F.3d__, 2016 WL 3632245, at *3 (2d Cir. 2016).

Even considering all of plaintiff's evidence as a whole, she has failed to raise issues of material fact that could establish that defendants' actions were in any way motivated by discrimination. A reasonable jury could not conclude that the reduction in plaintiff's hours was motivated by anything other than her employer finally getting fed up with her poor performance. Prior to December, 2013, the complaints about her performance had generally been made by a

single client at a time.  In the weeks leading up to the reduction in plaintiff's hours, Shivers held a meeting with six clients who had complaints about her performance.  There is no other reasonable inference than that this meeting was the straw that broke the camel's back, or at least that even if it wasn't, it was part of a documented, long-standing, and escalating history of poor performance.

Plaintiff does not deny that she had a history of altercations with Rochdale's clients, but she contends that some of the complaints were due to problems with the van's mechanical lifts. Even accepting this as true, there are many other complaints unrelated to the van's lifts that establish she was a poor employee.  The point is not whether every one of the allegations against her was true; rather, plaintiff has failed to produce any evidence to show that Shivers should have known that any of them were false.  Instead, plaintiff simply assumes that Shivers should have accepted plaintiff's unsupported excuses in every instance.

But an employer doesn't have to do that. An employer does not need certainty as to every infraction when an employee compiles a list as long as plaintiff did here.  The employer has a business to run, and when the weight of complaints about an employee from a variety of sources are as overwhelming as they are here, this Court would be acting as a super-personnel department to second-guess the employer.  See Delaney, 766 F.3d at 169 (quoting Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997)). That is not the purpose of Title VII.

Perhaps most importantly, plaintiff offers no evidence linking her gender to her reduction in hours.  No reasonable jury could conclude that her problematic relationship with Mack was the cause of her demotion in the face of such a horrendous work record.

Because plaintiff has failed to raise an issue of fact that a reasonable jury could resolve in her favor to find that defendants' actions were motivated at least in part by her gender, I grant summary judgment for defendants' on plaintiff's Title VII discrimination claim.

Plaintiff has also asserted an NYSHRL discrimination claim. NYSHRL claims are subject to the same <u>McDonnell Douglas</u> burden-shifting framework as claims brought under Title VII. <u>See</u> <u>Thomas v. City of N.Y.</u>, 953 F. Supp. 2d 444, 462 (E.D.N.Y. 2013). Therefore, summary judgment is granted for defendants on this claim as well.

### B. NYCHRL Claim

Plaintiff has also asserted a gender discrimination claim under the NYCHRL – which is subject to more liberal standards. <u>See</u> <u>Mihalik</u>, 715 F.3d at 108-09. Courts must construe federal civil rights statutes as a "floor below which the City's Human Rights law cannot fall," <u>Loeffler v. Staten Island University Hospital</u>, 582 F.3d 268, 278 (2d Cir. 2009), and its provisions must be construed liberally. Claims under the NYCHRL must be evaluated separately from federal and state law claims. <u>See</u> <u>Mihalik</u>, 715 F.3d at 109.

Section 8-107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person, to . . . discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). To state a claim for discrimination, a plaintiff must only show "the existence of differential treatment." <u>Williams v. N.Y.C. Hous. Auth.</u>, 61 A.D.3d 62, 76 872 N.Y.S.2d 27, 38 (1st Dep't 2009). The "employer may present evidence of its legitimate, nondiscriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played *no* role in its actions." <u>Wolf v. Time Warner, Inc.</u>,

548 F. App'x 693, 696 (2d Cir. 2013) (citing Mihalik, 715 F.3d at 110 n.8). "[S]ummary judgment dismissing a claim under the NYCHRL should be granted only if 'no jury could find defendant liable under any of the evidentiary routes – McDonnell Douglas, mixed motive, direct evidence, or some combination thereof.'" Kellman v. Metro. Transp. Auth., 8 F. Supp. 3d 351, 378-79 (S.D.N.Y. 2014) (citing Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 113, 946 N.Y.S.2d 27 (1st Dep't 2012)).

Even under the more liberal standard of the NYCHRL, a reasonable jury could not find that plaintiff was discriminated against. Although plaintiff has established a *prima facie* case of discrimination, that alone does not defeat summary judgment on a NYCHRL claim. See Melman, 98 A.D.3d at 123, 946 N.Y.S.2d at 37. Plaintiff has made allegations that she was subject to harassment by one of defendants' clients and has alleged defendants did not properly address her complaints. Plaintiff has not presented any issues of material fact about whether she was treated differently than other poorly performing employees. Plaintiff also has not raised any issues of fact that would allow a reasonable jury to find that her hours were reduced for any other reason than her unsatisfactory performance of her basic job functions. There is no evidence that Shivers' actions were motivated by a gender animus. No evidence exists for a reasonable jury to conclude plaintiff was the victim of gender discrimination under the NYCHRL.

## II.     Retaliation Claims

### A. *Title VII Claim*

A Title VII retaliation claim is evaluated under a similar McDonnell Douglas burden-shifting framework. A *prima facie* case requires plaintiff to show that (1) "[s]he engaged in protected participation or opposition under Title VII..., (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal

connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). The burden then shifts to defendants to provide a legitimate, non-retaliatory reason for the adverse employment action.

At step three of the analysis, plaintiff must identify an issue of material fact that would enable the jury to find that the reason given by defendant is "pretext for retaliatory animus based upon the protected Title VII activity," Porter v. Donahoe, 962 F. Supp. 2d 491, 497 (E.D.N.Y. 2013), which "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie* case, without more." Chambers, 43 F.3d at 38. Accordingly, on summary judgment the court's role is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

### 1. Step One

There is again no question that plaintiff has met the first three factors for her *prima facie* case – she engaged in a protected activity by complaining about the alleged harassment, of which the employer was aware, and she suffered an adverse employment action. Essential to plaintiff's *prima facie* retaliation case is the requirement that she advance facts showing a causal connection between her protected activity and her adverse employment action. See Gregory v. Daly, 243 F.3d 687, 700 (2d Cir. 2001). The causation issue here is whether a jury could reasonably find that plaintiff's complaints about Mack's behavior were related to the retaliatory act that she claims to have suffered. See Ezuma v. City Univ. of N.Y., 665 F. Supp. 2d 116, 127 (E.D.N.Y. 2009).

The Supreme Court has indicated that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be *very close*." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001) (emphasis added) (internal quotation marks omitted). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (quoting Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)).

In attempting to establish her causal connection, plaintiff testified that she frequently complained to Shivers. Conversely, defendants contend that plaintiff only complained about the harassment in April, 2012. Assuming plaintiff's version of the facts is true, she has adequately alleged a causal connection between her complaints and the reduction in her hours. She has testified that she complained frequently and continuously about Mack's behavior, up until the date of her reduction in hours. Although plaintiff has not provided dates of these complaints, she has provided some details about three meetings she testified were held with her, Mack, and Shivers. Based on these complaints, she has satisfied the causation requirement for a *prima facie* case.

2. Step Two

Defendants, however, have provided a legitimate, non-retaliatory reason for the adverse employment action, as explained in the preceding discrimination claim analysis. Defendants have shown that plaintiff's performance was unsatisfactory and continued to remain poor even after several meetings were held to address her attitude and performance of her basic duties.

Plaintiff worked at Rochdale for almost six years – during that time she managed to consistently and frequently incur complaints from both her co-workers and Rochdale's clients. Defendants have met their burden to show a legitimate reason for reducing her hours.

### 3. Step Three

In the final stage of the McDonnell Douglas framework, the question is whether a reasonable jury could draw an inference of retaliation either by evidence of pretext or by direct evidence of retaliatory animus. At this stage, plaintiff must establish that a reasonable jury could find retaliation was a 'but-for' cause of the adverse employment action. See Dall v. St. Catherine of Siena Med. Ctr., 966 F. Supp. 2d 167, 195-96 (E.D.N.Y. 2013) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013)). To meet this requirement, plaintiff must prove that her constructive termination would not have occurred absent a retaliatory motive. Accordingly, "plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).

There is no issue of fact as to whether defendants' reason was pretext for retaliatory animus. A reasonable jury could not find that defendants' reason was implausible or inconsistent. Moreover, "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." Id. at 847. Although "plaintiff may rely on evidence comprising [her] *prima facie* case, including temporal proximity," it be must be provided "together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." Id. Plaintiff has failed to show that a reasonable jury could find defendants retaliated against her based on any complaints that she made. Instead, the evidence in the record shows that plaintiff

was ripe for a reduction in hours or termination due to her continued poor performance of her most basic job duties. Summary judgment is therefore granted for defendants on plaintiff's Title VII retaliation claim.

Plaintiff has also asserted an NYSHRL retaliation claim. Because this claim is subject to the same standards as her federal claim, summary judgment is granted for defendants. See Thomas, 953 F. Supp. 2d at 462.

### B. NYCHRL Claim

Plaintiff's NYCHRL retaliation claim is evaluated under the same more liberal standard that was applied to her discrimination claim under the NYCHRL. The NYCHRL prohibits employers from "retaliat[ing] . . . in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (citations omitted). "[A] defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives . . . ." Id. at 113.

Plaintiff's retaliation claim fails even under this broader provision. There is no evidence that defendants took any action that deterred plaintiff from making complaints about Mack's behavior. Taking her testimony as true – she was not deterred in the least from continuing to complain about his behavior. As to the reduction in her hours, there is also no evidence upon which a reasonable jury could find that the reduction in plaintiff's hours was motivated by anything other than the repeated and frequent complaints defendants received about plaintiff's job performance.

### III. Hostile Work Environment Claim

To withstand summary judgment on a hostile work environment claim a "plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotation marks omitted). Further, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's protected characteristic." Brown, 257 F.3d at 252.

In assessing a hostile work environment claim, "courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014). Additionally, the Second Circuit has held that a failure to remember specific dates and times of harassment is not necessary to defeat a summary judgment motion. See Pucino v. Verizon Wireless Commc'ns, Inc., 619 F.3d 112, 120 (2d Cir. 2010).

A court's finding that there are issues of fact as to the existence of a hostile work environment is only the first step in determining if there may be liability for the employer. If a plaintiff is subjected to a hostile work environment by co-employees or clients but the employer has no reason to know about it, then the situation is akin to a tree falling in the forest with no one there to hear it. Thus, a court must also be able to impute the hostile work environment to plaintiff's employer. In general, an employer will be liable for a hostile work environment in the workplace when the employer knows of the hostile work environment but fails to take appropriate remedial steps. See Duch v. Jakubek, 588 F.3d 757, 763 (2d Cir. 2009). "Despite

offering a reasonable avenue of complaint to plaintiff, employer defendants can still be held liable if plaintiff can show that they 'knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" Id. (quoting Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000)).  The court analyzes whether an employer's remedial actions were sufficient based on the totality of the circumstances.  In the context of summary judgment, "[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1998), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).

Thus, I must analyze plaintiff's work environment as it relates to mistreatment that is connected to a protected characteristic, then determine whether such incidents are sufficiently pervasive, and finally, determine if the conduct can be imputed to defendants.

Plaintiff's hostile work environment claim is weak and I have some skepticism that she can prevail before a jury on it.  She has presented little evidence of a hostile work environment beyond her self-serving testimony that Mack harassed her on a daily basis and Shivers ignored her complaints about his actions.  She testified that Mack tried to touch her inappropriately almost every day, made repeated sexual advances to her, and on two occasions he even showed her his penis while she was driving the van, but she was not able to identify a single witness to even one of these events.  The only evidence beyond her own description is Shivers' admission that Mack acknowledged making an inappropriate comment about her breasts, but even as to that, there is no dispute that he apologized for it when Shivers confronted him.

Nevertheless, the Court finds that, taking all of the evidence in the most favorable light for plaintiff, there is a triable issue of fact as to whether a hostile work environment existed at

Rochdale. Under the totality of the circumstances, there are disputed issues of fact about whether plaintiff was subjected to a hostile work environment. If a jury were to credit plaintiff's allegations at their most extreme, it is possible it could find that Mack's behavior was driven by her gender and her conditions of employment were negatively impacted by his behavior.

For the same reason, it seems that there is an issue of fact as to whether defendants' response to plaintiff's complaints about Mack's harassment was "effectively remedial and prompt." Id. If a jury credits plaintiff's allegations that she made numerous complaints about Mack's behavior, then Shivers' decision to only hold one meeting to discuss these claims may not be sufficient and Mack's conduct could be imputed to defendants. On the other hand, a jury may very well find plaintiff's testimony about the number of complaints she made not credible and defendants would not be held liable for Mack's conduct.

Finally, the same considerations lead me to find that defendants' invocation of the Faragher/Ellerth defense does not provide a basis for summary judgment. The Faragher/Ellerth defense "consists of two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Gorzynski, 596 F.3d at 103 (internal quotations and alterations omitted). Because I have already found that there are triable issues of fact with regard to defendants' response to plaintiff's complaints, this defense – while still available at trial – does not preclude summary judgment.

Plaintiff's NYSHRL hostile work environment claim can proceed because it is evaluated under the same standard as her federal claim. Plaintiff's NYCHRL hostile work environment

claim can also proceed because this claim is evaluated under an even more liberal standard than plaintiff's federal claim.

### IV.    Aider and Abettor Liability

Plaintiff asserts a claim against Shivers for aider and abettor liability in violation of the NYSHRL and NYCHRL.  Under these statutes it is unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden" under the respective Laws.  See Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6).  An aiding and abetting claim can only proceed if a jury finds plaintiff has prevailed on any of her remaining claims.  See Soloviev v. Goldstein, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015); Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 115 (E.D.N.Y. 2011).

However, even if a jury were to find on plaintiff's behalf on her hostile work environment claim, summary judgment must be granted for Shivers on plaintiff's aiding and abetting claim because an individual cannot be held liable for merely aiding and abetting her own discriminatory conduct.  I recognize that in Tomaka v. Seiler Corp., 66 F.3d 1295, 1318 (2d Cir. 1995), the Second Circuit held that a "defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable."  However, I join other courts in this circuit that have distinguished Tomaka when applied to actions taken by one individual defendant.  See Alexander, 829 F. Supp. 2d at 115.  See also Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012); Raneri v. McCarey, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010).  Summary judgment is granted for defendant Shivers on this claim.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part as set forth above.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      August 4, 2016